UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.
As Broadcast Licensee of the September 18, 2004
De La Hoya/Hopkkins Program

                           Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                                CV-05-1037 (DLI) (JMA)

     -against-

MARTHA M. ROSADO, et al.,

                           Defendants.
------------------------------------------------------------------X

A P P E A R A N C E S:

       Julie Cohen Lonstein, Esq.
       Lonstein Law Office, P.C.
       1 Terrace Hill, P.O. Box 351
       Ellenville, New York 12428
       Attorney for Plaintiff

**AZRACK, United States Magistrate Judge:**

      By order dated August 1, 2005, the above captioned matter was referred to me by the Honorable Dora L. Irizarry for a report and recommendation on damages. Plaintiff has made an application for damages, as well as attorney's fees and costs against defendants Martha M. Rosado, individually and as officer, director, shareholder, and/or principal of Cama Fe Restaurant Corp. d/b/a Cama Fe Restaurant a/k/a Camafe Restaurant and Cama Fe Restaurant Corp. d/b/a Cama Fe Restaurant a/k/a Camafe Restaurant. For the reasons set forth below, I respectfully recommend that a judgment be entered against defendants, jointly and severally, in the amount of $989.10 in statutory damages, with a $10,000 increase for willful violation of the

1

statute, as well as $2,092.50 for attorney's fees and costs, for a total damages award of $13,081.60. I further recommend that plaintiff's request for a permanent injunction be denied.

## I. BACKGROUND

Plaintiff, Garden City Boxing Club, Inc. ("Garden City") was the broadcast licensee of the September 18, 2004 boxing match between Oscar De La Hoya and Bernard Hopkins, including preliminary bouts. (Compl. ¶ 12.) This license allowed Garden City to exhibit the fight to locations such as theaters, arenas, bars, clubs, lounges, and restaurants via closed circuit television and encrypted satellite signal. (Id.) Garden City paid a substantial fee to obtain the rights to telecast the program throughout New York and subsequently marketed the sub-licensing of the broadcast. (Compl. ¶ 14.) Thirty-six commercial establishments in New York paid substantial fees to Garden City in exchange for the right to view and transmit the event to their patrons. (Pl.'s Aff. for Default J. ("Pl.'s Aff."), Ex. B.) Defendants' establishment did not contract with plaintiff to broadcast the boxing match.

The interstate transmission of the match was electronically coded ("scrambled") to protect its access from those who did not pay or properly obtain a license for its viewing. By failing to contract with plaintiff for the rights to air the boxing match in their establishment, defendants would not have had the ability to receive the signal without (1) the use of a "blackbox," which is purchased for a fee, and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; (2) misrepresenting their commercial nature to the cable company in order to receive transmission at a residential price of $54.95; or (3) the use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment that had already purchased the broadcast at a residential price of $54.95. (Pl.'s Aff. ¶ 10.)

On September 18, 2004, without authorization, defendants intercepted and received the signal for the De La Hoya/Hopkins boxing event. (Compl. ¶ 15.) Defendants then transmitted the event to patrons in their commercial establishment, Camafe Restaurant, located at 200 Knickerbocker Avenue, Brooklyn, New York 11237. (Id. ¶ 16.) An investigator for plaintiff visited Camafe Restaurant at approximately 11:42 p.m. and observed the De La Hoya/Hopkins event on the television. He counted approximately 18 patrons and estimated the maximum capacity of the restaurant to be approximately 35 persons. (Aff. of Craig Carita dated October 5, 2004 ("Carita Aff."), at 1-2.)

Plaintiff filed a complaint against defendants on February 24, 2005. After having been personally served with copies of the Summons and Complaint, defendants failed to answer or otherwise move with respect to the Complaint and the time to do so has expired. To date, defendants have failed to make an appearance. As a result, an entry of a default judgment against defendants was ordered on August 1, 2005 by Judge Irizarry and the discrete issue of damages was referred to me for a report and recommendation.

## II. DISCUSSION

### A. Default

Defendants' default amounts to an admission of liability. Therefore, all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Plaintiffs, however, must prove damages before the entry of a final default judgment. Credit Lyonnais Securities, Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The district court must conduct

3

an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (internal quotations omitted).

**B. Damages**

Plaintiff seeks statutory damages for defendants' violations of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a), as well as enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). The court has discretion in assessing the amount of damages under these provisions. See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).

**1. Statutory Damages**

Plaintiff seeks damages for defendants' violations of 47 U.S.C. §§ 553(a)(1) and 605(a). Section 553 prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." Id. § 605(a).

Where, as in this case, defendants admit to violating both sections, a plaintiff may elect to

4

recover damages under § 605, which provides for greater recovery than § 553. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 131 n.5 (2d Cir. 1996). Section 605 states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i). As a result of defendants' default, Garden City has been unable to ascertain the extent of defendants' violations. Plaintiff has therefore elected to recover statutory damages.

The range of statutory damages for a violation of § 605(a) is $1,000 to $10,000. Id. § 605(e)(3)(C)(i)(II). The court has discretion to determine the number of violations and assess damages for each violation. Id. The statute does not clearly define "violation." It is therefore left to the court to decide which acts constitute a violation.

The court has two options when assessing damages under § 605. First, it can multiply the number of patrons present at the unauthorized broadcasting by a specific dollar amount, typically the customary charge for the pay-per-view event being shown. See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (awarding statutory damages of $50.00 per patron); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50.00 per patron); Cablevision Sys. Corp. v. 45 Midland Enterprises, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding statutory damages of $50.00 per patron). Alternatively, where the exact number of patrons is unknown, the court can impose damages based on what it "considers just." See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (awarding $5,250 in statutory damages); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages).

Other factors that the court may consider in assessing a plaintiff's damages are "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." Cablevision Sys. Corp. v. De Palma, No. 87-CV-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. 84-CV-1155, slip op. at *4-5 (E.D.N.Y. May 20, 1988)).

Garden City invests millions of dollars annually promoting boxing broadcasts. (Pl.'s Aff. ¶ 12.) With each establishment that pirates signals, plaintiff suffers an erosion of its profits and is consequently forced to pass on these costs to lawful residential and commercial customers through increased pricing. (Id. ¶ 15.) An affidavit from Garden City's President states that a personal residence would have been able to purchase the De La Hoya/Hopkins event for $54.95. (Id. ¶ 10B.) Plaintiff's fee for sub-licensing the broadcast to commercial establishments in New York was approximately $20 per patron based on the commercial establishment's fire code occupancy. (Pl.'s Aff., Ex. A). Thus, had defendants paid the sub-licensing fee for their establishment, which plaintiff's investigator estimated to have an approximate capacity of 35 persons, the cost would have been $700. However, if defendants were made to pay the $20 per patron price, their actions of pirating the broadcast would carry no more ramifications than had they legally purchased the sub-licensing fee.

Based upon the foregoing considerations and facts of this case, I recommend that the per patron amount be set at $54.95. When the investigator visited Camafe Restaurant, the investigator determined that there were approximately 18 patrons present. (See Carita Aff. at 1.)

Accordingly, I respectfully recommend that Garden City be awarded statutory damages in the amount of $989.10.[1]

### 2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii), which provides for enhanced damages if the violation was committed willfully and for commercial advantage or private financial gain. Willfulness is defined as "disregard for the governing statute and an indifference for its requirements[,]" Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985)), and is established by the fact that an event is broadcast, without authorization, through a defendant's cable box. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Section 605(e)(3)(C)(ii) allows for increased damage awards against persons or entities operating commercial establishments that show the unauthorized programming to its patrons. See Googies Luncheonette, 77 F. Supp. 2d at 491 (increasing award by $12,000); Taco Rapido Rest., 988 F. Supp. at 111-12 (increasing award by $5,000).

Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. See Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec Y Caridad, Inc., No. 01-CV-6562, 2001 WL 1586667, at *2

---

[1] This sum represents $54.95 for each of the 18 patrons that the investigator observed on the evening he visited Camafe Restaurant.

(S.D.N.Y. Dec. 12, 2001). Courts also consider the plaintiff's significant actual damages. Id.

In this case, plaintiff seeks the maximum increased award of $100,000, and has offered evidence that defendants pirated one other event in addition to the De La Hoya/Hopkins boxing match. (Aff. of Julie Cohen Lonstein dated Aug. 30, 2005 ("Lonstein Aff."), Ex. B.) On September 13, 2003, defendants pirated the De La Hoya/Mosley event from Garden City Boxing Club, Inc. See Garden City Boxing Club, Inc. v. Rosado, No. 04-CV-3477 (E.D.N.Y. filed Aug. 12, 2004). Defendants failed to answer or otherwise appear and a default judgment was granted by the Honorable Nina Gershon. The case was referred to Magistrate Matsumoto for a report and recommendation in which she recommended that plaintiff be awarded total damages in the amount of $13,615. I therefore recommend that the damage award in this case be increased by $10,000 for willful violation of the statute. This enhancement adequately reflects plaintiff's estimated damages, defendants' likely commercial gain in selling food and drink to approximately 18 patrons, and the need to deter future theft of service.

**C. Pre-judgment Interest**

Plaintiff also requests an award of pre-judgment interest. (Pl.'s Mem. at 11.) Pre-judgment interest, however, is not appropriate in this case.

In Kingvision Pay-Per-View, Ltd. v. Olivares, No. 02-CV-6588, 2004 WL 744226 at *5 (S.D.N.Y. Apr. 5, 2004), the court considered whether the plaintiff was entitled to pre-judgment interest under N.Y. C.P.L.R. § 5001 and concluded that it was not. An award of interest under § 5001 "is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved. It is not to provide a windfall for either party." 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d

559, 560, 647 N.Y.S.2d 30, 31 (2d Dep't. 1996) (citations omitted).

There are two major exceptions to granting pre-judgment interest: personal injury and punitive damages claims. See Olivares, 2004 WL 744226, at *5; Deborah S. v. Diorio, 160 Misc.2d 210, 612 N.Y.S.2d 542 (1st Dep't. 1994). Statutory damages under the Communications Act are "analogous to punitive damages in that they are designed to deter others from similar infringing activity." See Olivares, 2004 WL 744226, at *5; see also Kaplan v. First City Mortgage, 183 Misc. 2d 24, 30, 701 N.Y.S.2d 859, 865 (N.Y. City Ct. 1999) (statutory damages under Telephone Consumer Protection act of 1991 are punitive; no interest accrues before judgment). Accordingly, I recommend that plaintiff's request for pre-judgment interest be denied.

**D. Permanent Injunction**

Plaintiff also requests a permanent injunction enjoining defendants from further violating §§ 553 or 605. (Pl.'s Mem. at 10.) Plaintiff contends that many business establishments that pirate one event will likely pirate broadcasts in the future. (Id.)

A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Main Events/Monitor Prods. v. Batista, No. 96-CV-5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). The first condition is satisfied because injunctions are available remedies pursuant to §§ 553(c)(2)(A) and 605(e)(3)(B)(i). Second, a party seeking a preliminary injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. See Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975). Plaintiff has failed to satisfy this condition. In this case, there is no evidence

that plaintiff will suffer irreparable harm or that the statutory and enhanced damages are insufficient to deter future conduct. I therefore recommend that plaintiff's request for a permanent injunction be denied.

### E. Attorneys' Fees and Costs

#### 1. Attorney's Fees

Finally, plaintiff is seeking an award of attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Pl.'s Mem. at 10.) Under the "lodestar" method, attorney's fees are determined by taking "the number of hours reasonably expended on the litigation [multiplied] by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). Reasonable hourly rates are determined by reference to "the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994). To receive such fees, plaintiff must present time records to substantiate its fee request. See New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." Id. at 1148.

In the present case, attorney Julie Cohen Lonstein has submitted an affidavit stating that she and her firm, Lonstein Law Office, P.C., expended a total of 8.75 hours during the pendency of this action. (Lonstein Aff. ¶ 4.) She has not submitted documentation to authenticate the number of hours spent; however, her affidavit incorporates contemporaneous time records detailing the work done, hours expended, and the total amount due. (Id.) Ms. Lonstein affirms

that she expended a total of 5.25 hours at a rate of $200 per hour, reflecting, inter alia, 1.25 hours of factual research and development, 1.5 hours drafting the Complaint and corporate disclosure, 1 hour drafting the Request for Default, and 1.5 hours drafting the Motion for Default. (Id.) Ms. Lonstein also affirms 3.5 hours of paralegal time at a rate of $75 per hour. (Id.) Plaintiff seeks a total award of $1,312.50 for attorney's fees. I find that the total number of hours is reasonable. Accordingly, I recommend that plaintiff be awarded a total of $1,312.50 for attorney's fees.

### 2. Costs

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff seeks reimbursement for costs in the amount of $780.00, which includes $250.00 for the court filing fee, $180.00 for the cost of service of process, and $350.00 for investigative costs. (Lonstein Aff. ¶ 3.) Plaintiff has submitted documentary evidence to substantiate its request and I find these amounts to be reasonable. Accordingly, I respectfully recommend that plaintiff be awarded $780.00 for costs incurred in connection with this litigation.

### III. CONCLUSION

For the above reasons, I respectfully recommend that a judgment be entered against defendants, jointly and severally, in the amount $989.10 in statutory damages, with a $10,000 increase for defendants' willful violation of the statute, as well as $2,092.50 for attorney's fees and costs, for a total damages award of $13,081.60. I further recommend that plaintiff's request for a permanent injunction be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See

28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: Brooklyn, New York
October 6, 2005

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

Sent to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill, P.O. Box 351
Ellenville, New York 12428
Attorney for Plaintiff

Martha Rosado
200 Knickerbocker Avenue
Brooklyn, New York 11237
Defendant

Camafe Restaurant
200 Knickerbocker Avenue
Brooklyn, New York 11237
Defendant